COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Coleman,
         Elder, Bray, Annunziata, Bumgardner, Frank and
         Humphreys
Argued at Richmond, Virginia


WARFORD L. O'BANION, S/K/A
  WORFORD LEE O'BANNION
                                             OPINION BY
v.   Record No. 2698-97-4           JUDGE ROSEMARIE ANNUNZIATA
                                            JULY 25, 2000
COMMONWEALTH OF VIRGINIA


                  UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                Carleton Penn, Judge Designate

          S. Jane Chittom, Appellate Counsel; Elwood
          Earl Sanders, Jr., Appellate Defender
          (Public Defender Commission, on briefs), for
          appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          brief), for appellee.


     On October 19, 1999, a panel of this Court affirmed in part

and reversed in part the convictions of Warford L. O'Banion

("appellant") for trespassing and possessing a concealed weapon,

in contravention of Code §§ 18.2-119 and 18.2-308.2,

respectively.  We granted appellant's petition for rehearing en

banc to consider his contentions 1) that the trial court erred

in refusing to give his proposed jury instruction on the claim

of right defense to trespass; 2) that the trial court erred in

denying his motion to strike the Commonwealth's evidence because

a steak knife and box-cutter found in his possession are not "weapons" as defined by Code §§ 18.2-308.2 and 18.2-308(A); 3) that the Leesburg Police Department lacked the authority to bar him from entering a private apartment complex; 4) that the process by which he was barred violated his constitutional rights under the Fifth and Fourteenth Amendments; and 5) that his arrest, resulting from the exercise of unfettered discretion by police, violated the Fourth Amendment. We affirm appellant's conviction for possession of a concealed weapon but reverse the conviction for trespass based on the trial court's erroneous denial of appellant's jury instruction.

## FACTUAL BACKGROUND

On June 29, 1995, the management of Loudoun House, a privately-owned and federally-subsidized apartment complex, issued a limited power of attorney appointing "each and every sworn officer of the Leesburg Police Department as [its] true and lawful attorneys-in-fact." The power of attorney authorized Leesburg police officers to "serve trespass notices to any persons encountered on Loudoun House property who are not on a lease and cannot demonstrate a legitimate purpose for being on the premises." Additionally, the officers were authorized to file criminal complaints for trespass against persons who returned to the Loudoun House premises after being served with a notice.

-

In practice, decisions regarding whether to issue a trespass notice to an individual are left to the discretion of the officers of the Leesburg Police Department. Police are not required to consult the management of Loudoun House for prior approval. Two officers characterized the arrangement between Loudoun House and Leesburg police as a "partnership" for the purpose of providing security at the apartment complex; the police collect no fee for serving trespass notices on individuals. When serving a trespass notice police normally read and explain its terms to the barred individual but do not usually furnish a copy of the notice.

The notice consists of a one-page form, providing that the subject individual is no longer permitted to enter Loudoun House property "under any circumstances" and would be subject to arrest for trespassing if he or she did so. Once served with a trespass notice, individuals are barred from returning to Loudoun House indefinitely. The Leesburg Police Department has an unwritten policy governing how individuals may have their barment lifted. Under that policy, assuming compliance with the barment's terms and the absence of any involvement in any criminal activity around Loudoun House, an individual may request to meet with police to discuss terminating the barment three months after its issuance. This policy is usually explained orally by the barring officer at the time a notice is issued.

-

On April 29, 1996, Captain Christopher Jones of the Leesburg Police Department received a complaint that appellant had instigated a fight, using baseball bats, on the premises of Loudoun House. That evening, police confronted appellant on the premises. After interviewing his sister and checking a current roster of residents at Loudoun House, Jones determined that appellant was not a lessee in the building. Jones issued appellant a trespass notice and explained the procedure for requesting termination of the barment. Appellant refused to sign the trespass notice and was not given a copy.

On the night of January 18, 1997, police observed appellant enter the main entrance of Loudoun House. At that time, appellant lived with his girlfriend, off the premises of Loudoun House. When stopped by police, appellant indicated that he believed his barment had automatically expired after ninety days. Police arrested appellant for trespass in violation of Code § 18.2-119, after verifying that appellant was still barred from Loudoun House property.[1] Police searched appellant incident

---

[1] Code § 18.2-119 provides:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor.

to his arrest and found a steak knife with a six-inch blade and a silver, razor-bladed box-cutter on his person.

At trial, two witnesses, Gail O'Bannion-Green and Ami Dorsey, residents at Loudoun House, testified in appellant's defense. O'Bannion-Green is appellant's sister, and Dorsey is the mother of one of appellant's children. Both witnesses were present when Captain Jones barred appellant. Both witnesses testified that they heard Jones tell appellant he was barred for ninety days and that he could be barred for life if he returned to Loudoun House before then. Neither witness heard Jones tell appellant that he had to request permission from police to return to Loudoun House three months after the barment issuance.

At the close of evidence, appellant tendered the following jury instruction:

> Criminal intent is an essential element of the statutory offense of trespass. One cannot be convicted of trespass when one enters or stays upon the land under a bona fide claim of right. A Bona Fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization.

Stating that appellant "did not assert in his evidence any bona fide claim of right," the trial court found no justification for giving this instruction and refused it accordingly.

-

JURY INSTRUCTIONS

Appellant contends the trial court erred in refusing to grant his proposed jury instruction on the claim of right defense to trespass. We agree and reverse appellant's conviction for trespass on this ground.

Both the Commonwealth and the defendant are entitled to appropriate jury instructions on the law applicable to their version of the case. See Banner v. Commonwealth, 204 Va. 640, 645-46, 133 S.E.2d 305, 309 (1963). When evidence exists in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction. See Painter v. Commonwealth, 210 Va. 360, 365, 171 S.E.2d 166, 170-71 (1969); Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990). "A proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions." Code § 19.2-263.2. "[W]here evidence tends to sustain both the prosecution's and the defense's theory of the case, the trial judge is required to give requested instructions covering both theories." Diffendal v. Commonwealth, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989).

Although Code § 18.2-119 is silent as to intent, the case law in Virginia has uniformly construed the statutory offense of criminal trespass to require a willful trespass. See Campbell

-

v. Commonwealth, 41 Va. (2 Rob.) 791 (1843); Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 278 (1988). As such, one who enters or stays upon another's land under a bona fide claim of right cannot be convicted of trespass. See Wise v. Commonwealth, 98 Va. 837, 837, 36 S.E. 479, 479 (1900); Reed, 6 Va. App. at 71, 366 S.E.2d at 278. "[A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization." Reed, 6 Va. App. at 71, 366 S.E.2d at 278. To refuse an instruction propounding this legal principle, when there is evidence to support it, is error. See Wise, 98 Va. at 837, 36 S.E. at 479; see also McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) ("It is immaterial that the jury could have reached contrary conclusions. If a proffered instruction finds any support in credible evidence, its refusal is reversible error.").

In this case, appellant testified that he believed his barment lapsed ninety days after its issuance and that, after such time, he was legally authorized to return to the premises of Loudoun House. He based this belief on the information that Captain Jones allegedly provided to him at the time he was issued a trespass notice. The police provided no hard copy of the notice to appellant that would, by its terms, dispel or contradict this belief. Moreover, appellant provided the

-

testimony of two witnesses who stated their understanding that, based on Captain Jones' explanation, the barment only lasted ninety days.  Even if appellant and his corroborating witnesses were mistaken on this point, their testimony constitutes evidence of appellant's sincere belief that he was legally authorized to be present on the premises of Loudoun House at the time of his arrest for trespass.  Based on this evidence, appellant proffered a jury instruction that accurately summarized the applicable law regarding the claim of right defense to criminal trespass in Virginia.  Notwithstanding the fact that the jury may well have discounted the probative value of appellant's evidence, to refuse the proffered instruction was reversible error.  Accordingly, we reverse appellant's conviction for trespass and remand for a new trial, if the Commonwealth be so advised.

POSSESSION OF A CONCEALED WEAPON

Appellant next contends that his conviction for possession of a concealed weapon should be reversed as the steak knife and box-cutter found on his person are not "weapons" within the meaning of Code §§ 18.2-308.2 and 18.2-308(A).  We disagree.

In the absence of legislative history to the contrary, penal statutes are to be strictly construed against the Commonwealth and in favor of the citizen's liberty.  See Cox v. Commonwealth, 220 Va. 22, 25, 255 S.E.2d 462, 464 (1979).  "Such statutes cannot be extended by implication or construction, or

-

be made to embrace cases which are not within their letter and spirit." Berry v. City of Chesapeake, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969); Price v. Commonwealth, 209 Va. 383, 385-86, 164 S.E.2d 676, 678 (1968). Although any ambiguity or reasonable doubt as to the proper construction of a penal statute must be resolved in favor of the accused, a defendant is not entitled to benefit from an "'unreasonably restrictive interpretation of the statute.'" Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 357 (1980) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

The Code provides that it is unlawful for any person who has been convicted of a felony to knowingly and intentionally carry about his person, hidden from common observation, "any dirk, bowie knife, switchblade knife, ballistic knife, razor, slingshot, spring stick, metal knucks, blackjack, or . . . any weapon of like kind." Code §§ 18.2-308(A), 18.2-308.2. The Code does not absolutely prohibit a felon from carrying a knife, but proscribes specific kinds of knives and those of like kind. See Ricks v. Commonwealth, 27 Va. App. 442, 444, 499 S.E.2d 575, 576 (1998). The proscribed knives have been given their ordinary meanings by this Court or by the statute itself.[2]

---

[2] "A 'dirk' or weapon of like kind is any stabbing weapon having two sharp edges and a point, including daggers, short swords and stilettos." Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994). A "bowie knife" is defined as "a large hunting knife adapted [especially] for knife-fighting and common in western frontier regions and having a

-

The Supreme Court of Virginia has held that, when determining whether an object falls within the definition of a "weapon" as it is used in Code § 18.2-308(A), the statutory construction rules of ejusdem generis and noscitur a sociis should be applied. See Wood v. Henry County Public Schools, 255 Va. 85, 94, 495 S.E.2d 255, 260-61 (1998). According to the rule of ejusdem generis, "'when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words.'" Id. at 94, 495 S.E.2d at 260 (quoting Martin v. Commonwealth, 224 Va. 298, 301-02, 295 S.E.2d 890, 892-93 (1982)). The rule of noscitur a sociis dictates "'when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words.'" Id. at 94, 495 S.E.2d at 260-61 (quoting Martin, 224 Va. at 301-02, 295 S.E.2d at 892-93 (holding that a pocket-knife is neither a dirk, bowie

---

guarded handle and a strong single-edge blade typically 10 to 15 inches long with its back straight for most of its length and then curving concavely and sometimes in a sharpened edge to the point." Wood v. Henry County Public Schools, 255 Va. 85, 95 n.6, 495 S.E.2d 255, 261 n.6 (1998) (citing Webster's Third New International Dictionary 262 (1981)). A switchblade knife is defined as "a pocketknife having the blade spring-operated so that pressure on a release catch causes it to fly open." Id. (citing Webster's at 2314). "'Ballistic knife' means any knife with a detachable blade that is propelled by a spring-operated mechanism." Code § 18.2-308(N).

-

knife, switchblade knife, ballistic knife, nor a weapon of like kind within the meaning of Code § 18.2-308(A))).

Based on the rules of ejusdem generis and noscitur a sociis, we conclude that the box-cutter possessed by appellant is a weapon within the proscriptive reach of Code § 18.2-308.2. The available evidence shows that the box-cutter found on appellant's person is a cutting instrument that holds a razor blade. By its terms, the Code prohibits the carrying of a concealed razor or any weapon of like kind. See Code §§ 18.2-308(A), 18.2-308.2. "Razor" has neither been defined by statute nor case law in Virginia. Whether a term undefined by statute should be given its traditional meaning or a more expansive meaning "depends upon the purpose and policy underlying the particular statute." Jones v. Commonwealth, 16 Va. App. 354, 357, 429 S.E.2d 615, 616 (1993). When a statute is designed to deter a broad range of conduct that produces apprehension of physical harm in others, a more expansive definition of undefined statutory terms is appropriate in order to effectuate that purpose. See Holloman, 221 Va. at 198, 269 S.E.2d at 357 (holding that the definition of "firearm" includes BB guns when the purpose of the statute is to deter people from using firearms in the commission of a felony). Conversely, "when a statute is designed only to proscribe the act of possessing a firearm or the conduct of a felon in order to reduce a real threat of harm to the public, a narrower, more

-

traditional definition" is required.  <u>Jones</u>, 16 Va. App. at 357,

429 S.E.2d at 616.  <u>See</u> <u>Timmons v. Commonwealth</u>, 15 Va. App.

196, 200-01, 421 S.E.2d 894, 897 (1992) (stating that a statute

which proscribes the possession of a "firearm" while in

possession of cocaine does not include objects that merely

appear to have the capability of firing when, in fact, they do

not).  We apply the latter principle to define the instrument at

issue.

Under its traditional dictionary definition, a razor is "a

keen-edged cutting instrument made with the cutting blade and

handle in one (as a straight razor) or with the cutting blade

inserted into a holder (as a safety razor or electric razor) and

used chiefly for shaving or cutting the hair."  <u>Webster's Third</u>

<u>New International Dictionary</u> 1888 (1981).  The box-cutter at

issue is plainly "a keen-edged cutting instrument."

Furthermore, this "keen-edged cutting instrument" is not

materially different from a locked-blade knife, in that it has a

retractable blade that can be locked into place.  As such, by

incorporating a razor blade, the box-cutter combines the

fine-edged sharpness of a straight razor with the retracting

capacity of a locked-blade knife.  Those characteristics bring

the box-cutter squarely within the definitions of "razor" under

-

Code § 18.2-308(A).  Accordingly, we affirm appellant's conviction of possessing a concealed weapon.[3]

## VALIDITY OF THE TRESPASS NOTICE

Appellant further asserts, on several grounds, that the trespass notice issued by Leesburg police was void.  We disagree with each of appellant's contentions.

### A.  AUTHORITY TO BAR

Appellant first contends the police did not have the authority to issue trespass notices on behalf of a private entity based on Dillon's Rule.  At the time of appellant's arrest, Code § 15.1-138 provided:

> The officers and privates constituting the police force of counties, cities and towns of the Commonwealth are hereby invested with all the power and authority which formerly belonged to the office of constable at common law in taking cognizance of, and in enforcing the criminal laws of the Commonwealth and the ordinances and regulations of the county, city or town, respectively, for which they are appointed or elected.  Each policeman shall endeavor to prevent the commission within the county, city or town of offenses against the law of the Commonwealth and against the ordinances and regulations of the county, city or town; shall observe and enforce all such laws, ordinances and regulations; shall detect and arrest offenders against the same; and shall secure the inhabitants thereof from violence and the property therein from injury.

---

[3] Because we find that the box-cutter is a weapon proscribed by Code § 18.2-308.2, we need not address whether the steak knife found on appellant's person is also proscribed.

-

Such policemen shall have no power or
authority in civil matters . . . .[4]

The issue raised by appellant has been settled by our decision in Holland v. Commonwealth, 28 Va. App. 67, 502 S.E.2d 145 (1998). We accordingly decline to reverse the trial court on this ground.

### B.   DUE PROCESS CLAIM

Appellant next contends that his trespass notice was issued in violation of the United States Constitution and, therefore, cannot support his conviction under Code § 18.2-119. More specifically, appellant contends that, by issuing his trespass notice without providing a meaningful opportunity to be heard on the validity of such notice, Leesburg police officers violated his constitutional right to due process.

"The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty or property without due process of law." Jackson v. W., 14 Va. App. 391, 405, 419 S.E.2d 385, 393 (1992). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). Due process analysis consists of two steps. See Klimko v. Virginia Employment Comm'n, 216 Va. 750, 754, 222 S.E.2d 559,

---

[4] Although this section has been repealed, it was still in effect at the time of appellant's arrest.

563, <u>cert.</u> <u>denied</u>, 429 U.S. 849 (1976).  First, a deprivation of a liberty or property interest must be demonstrated.  See <u>J.P. v. Carter</u>, 24 Va. App. 707, 715, 485 S.E.2d 162, 167 (1997). Then, "'[o]nce it is determined that due process applies, the question remains what process is due.'"  <u>Id.</u> (quoting <u>Jackson</u>, 14 Va. App. at 406, 419 S.E.2d at 393-94).  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. . . . [T]he range of interests protected by procedural due process is not infinite."  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972).

Thus, appellant must first establish a deprivation of either a liberty or property interest in order to invoke the protection of the Due Process Clause of the Fourteenth Amendment.  Appellant has identified neither and, on that basis, we find his constitutional claim to be without merit.

### C.  FOURTH AMENDMENT CLAIM

Appellant also contends that his arrest violated the Constitution because it resulted from the exercise of unfettered discretion of police officers to bar individuals from Loudoun House.

While it is true that searches and seizures conducted at the unfettered discretion of the police violate the Fourth Amendment's proscription of "unreasonable" searches and seizures, <u>Simmons v. Commonwealth</u>, 238 Va. 200, 202-03, 380

-

S.E.2d 656, 658 (1989); Hall v. Commonwealth, 12 Va. App. 972, 973, 406 S.E.2d 674, 675 (1991), in this case, the police acted within constitutionally established parameters in stopping appellant on April 29, 1996. A police officer may detain an individual to conduct a brief investigation without violating the Fourth Amendment when the officer has a reasonable, articulable suspicion that a person is engaging in, or is about to engage in criminal activity. See Terry v. Ohio, 392 U.S. 1, 27 (1968). The officer's justification for stopping the individual need not rise to the level of probable cause, but must be based on more than an "inchoate and unparticularized suspicion or 'hunch.'" Id.

On April 29, 1996, the police received a complaint that appellant instigated a fight on the premises of Loudoun House earlier that evening. Subsequently, police found appellant on the premises of Loudoun House and stopped him to investigate. Based on these facts, we find that the police had a reasonable and articulable suspicion that appellant was engaging in criminal activity. An investigatory stop on such grounds fully comports with constitutional requirements.

Based on the foregoing we affirm appellant's conviction for possession of a concealed weapon and reverse his conviction for trespass.

Affirmed in part,
reversed and remanded
in part.

-

Benton, J., concurring, in part, and dissenting, in part.

I concur in the parts of the opinion styled FACTUAL BACKGROUND and JURY INSTRUCTIONS and in the holding that the trial judge committed reversible error in refusing the instruction. I dissent from the other holdings and would reverse the convictions and dismiss the indictments.

I.

In pertinent part, Code § 18.2-308(A) provides as follows:

> If any person carries about his person, hidden from common observation, . . . any dirk, bowie knife, switchblade knife, ballistic knife, razor, slingshot, spring stick, metal knucks, or blackjack . . . or . . . any weapon of like kind as those enumerated in this subsection, he shall be guilty of a Class 1 misdemeanor.

"[B]ecause the statute . . . is penal in nature, it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Furthermore, an accused person "is entitled to the benefit of any reasonable doubt about the construction of a penal statute." Martin v. Commonwealth, 224 Va. 298, 300-01, 295 S.E.2d 890, 892 (1982).

In Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994), we noted that "[i]t is generally agreed that in using such terms, [the General Assembly] intend[ed] to exclude from concealed weapons statutes innocuous

-

household and industrial knives."  The implement that O'Banion had in his pocket is a common industrial tool.  Although it contains a razor blade as a part of its design, the industrial tool is not a "razor" or weapon of like kind prohibited by the statute.  Likewise, a common kitchen steak knife is not within the scope of items prohibited by this statute.  See Ricks v. Commonwealth, 27 Va. App. 442, 445, 499 S.E.2d 575, 576 (1998).

                                II.

In determining powers of local municipalities, "Virginia follows the Dillon Rule of strict construction."  City of Richmond v. Confrere Club, 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).  In applying the Dillon Rule, if there is a reasonable doubt whether the power exists, that doubt must be resolved against the municipality.  See id.

Without any statutory authority, the Town of Leesburg and its police department entered into an agreement with the management of Loudoun House to act as a private security service and to decide, at the unfettered discretion of the police, who would and would not be allowed to enter private premises.  In so doing, the Leesburg Police Department did not simply enforce the law against trespass; it took upon itself the property owner's right to distinguish between welcome and unwelcome visitors to the apartment complex.  When this case was decided, Code § 15.1-138 provided, with exceptions not applicable to this case, that police departments "shall have no power or authority

-

in civil matters."  This type of barment was at the outset a civil matter.

As the majority recognizes, the evidence established that the decision whether to bar a person from the Loudoun House premises was left to the sole discretion of any police officer employed by the Leesburg Police Department.  That unfettered discretion to bar individuals resulted in the officers on the street deciding which persons could later be stopped and charged criminally.  The Supreme Court has consistently overturned this kind of practice because it "'necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat.'" City of Chicago v. Morales, 527 U.S. 41, 60 (1999) (quoting Kolendar v. Lawson, 461 U.S. 352, 359 (1983)); see also Smith v. Goguen, 415 U.S. 566, 575 (1974) (holding that "such a standardless sweep allows policemen . . . to pursue their personal predilections").  When conduct can be made criminal "at the whim of any police officer," that delegation of authority to the officer is unconstitutional.  Shuttlesworth v. Birmingham, 382 U.S. 87, 90 (1965).  Thus, stops and arrests by the police of persons who are barred by the exercise of this unfettered discretion are unreasonable under the Fourth Amendment and are an arbitrary deprivation of liberty by police, in violation of the Due Process clause.

For these reasons, I would reverse the convictions and dismiss the indictments.

-