COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Clements and Kelsey
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1672-03-2           JUDGE ROBERT J. HUMPHREYS
                                        JANUARY 6, 2004
JASON IMMANUEL COLEMAN


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellant.

John G. LaFratta (Rhonda L. Earhart; Main Street Law, on brief), for
appellee.


The Commonwealth appeals a decision of the trial court, pursuant to Code § 19.2-398,

suppressing evidence pertaining to Jason I. Coleman's indictment for possession of cocaine with

intent to distribute, in violation of Code § 18.2-248 (an "Unclassified Felony").[1]  The

Commonwealth argues the trial court erred in finding that police lacked the requisite probable cause

to lawfully arrest Coleman.  For the reasons that follow, we reverse the trial court's ruling and

remand for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover, as this opinion has no precedential value, we recite only those facts necessary to our holding.

[1] Coleman was also charged with a misdemeanor offense of driving on a suspended license, in violation of Code § 46.2-301.

I.  Background

When addressing an allegation of error arising from a ruling on a motion to suppress, we review the evidence in the light most favorable to the party prevailing below, together with all reasonable inferences that may be drawn.  See Smith v. Commonwealth, 41 Va. App. ___, ___ S.E.2d ___ (Nov. 25, 2003).  The burden to establish that the denial of the motion to suppress constituted reversible error rests with the appellant.  See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

The relevant facts in this case are not in dispute.  On September 26, 2002, at approximately 10:10 p.m., Detective D.G. Henderson, of the Chesterfield County Police Department, was conducting surveillance of the Par Three Motel in Chesterfield County.  He and other officers in his unit were "getting ready to set up a controlled buy in there and do a takedown."

Detective Henderson observed a black Chevy Caprice drive into the parking lot of the motel shortly after he arrived.  The driver of the car turned the headlights off immediately after entering the parking lot, and drove to the building near the rental office.  Henderson later learned that Coleman was the driver of that car.  Rodney Goodwin was Coleman's passenger.

Detective Henderson saw Coleman and Goodwin get out of the car and enter one of the motel rooms.  He then saw a female, along with a "couple other subjects," walk across the parking lot and enter the same room.

Approximately three minutes later, Henderson observed Coleman and Goodwin leave the room and get back into the Chevy Caprice.  Coleman started the car, drove out of the parking lot, and traveled "southbound on Jeff Davis Highway."  Detective Henderson followed in his unmarked patrol car and contacted "the other units," advising them of what he had observed.

Approximately "a minute" later, Detective Henderson saw Coleman "pull into [a] Pilot Gas Station" and park next to a pay phone.  The Pilot Gas Station was located in "Colonial Heights,"

just outside of Chesterfield County.[2] A male, who Detective Henderson later learned was Mark Shiers, was standing next to the gas station pay phone. Henderson saw Goodwin get out of the car and walk across the parking lot. He then saw Shiers get into the car and close the door. Detective Henderson observed Coleman and Shiers engage in "what appeared to be [a] hand-to-hand exchange."

At that point, Detective Henderson and the other units that had arrived approached the car on foot. One of the officers, "Officer Gotsy," observed "some U.S. currency in one [of Coleman's] hand[s] and some crack cocaine in another of [Coleman's] hands." Officer Gotsy "communicated" this information to Detective Henderson. The officers then ordered Coleman out of the car. Upon searching Coleman, the officers found two twenty dollar bills in Coleman's pants pockets and a cellular phone. They found a five dollar bill and a one dollar bill in the "seat" of the car.

Detective Henderson placed Coleman under arrest for "possession of cocaine" and read him his Miranda rights. Coleman then told Henderson that he had "throw[n] cocaine underneath the [car]." Coleman stated that it was "around 3 grams." Coleman next "admitted to going to the Par Three Motel and selling $20 worth of cocaine. He stated he did not sell any cocaine to [Shiers]. He further stated that he was having hard times because no one wants to hire him. And he stated that his past is following him."

A Chesterfield County grand jury subsequently indicted Coleman for possession of cocaine with intent to distribute, in violation of Code § 18.2-248. The indictment alleged that Coleman engaged in the unlawful conduct "on or about, September 26, 2002" in the "County of Chesterfield."

---

[2] The Commonwealth stipulated that the Pilot Gas Station was "more than 300 yards outside of [Chesterfield County]."

During the hearing on Coleman's motion to suppress, Henderson testified that he had "been involved in narcotics investigation" for "[t]hree[-]and[-]a[-]half year[s]." He stated he had made "[h]undreds of drug arrests." Detective Henderson testified that the activity Coleman engaged in at the gas station "raise[d]" his suspicions that a drug transaction was occurring at that time. Henderson agreed that he did not observe any crime at the Par Three Motel.

Coleman argued this evidence established that Detective Henderson observed no crime and, therefore, had no "probable cause" "to stop" Coleman until Henderson followed Coleman "outside of [Henderson's] jurisdiction." The Commonwealth responded

> it may very well be illegal for a proper arrest, an arrest in violation of state code. But no evidence derived therefrom it [sic] would be suppressed. The exclusionary rule works only as a remedy to violations of the [sic] constitutional import . . . . But there is no constitutional violation. Because the officers, whether you call them citizens at that point or police officers, they observed conduct that gave them probable cause to believe that a felony offense was occurring. . . . [T]hat confession was lawfully obtained in the course of the investigation to [sic] a Colonial Heights crime, to an offense there.

After reviewing briefs[3] filed by the parties, the trial court sustained Coleman's motion. The Commonwealth, thereafter, filed a motion to vacate the suppression order, arguing that the trial court failed to "adequately state the basis for the Court's decision." The Commonwealth contended this failure would inhibit its efforts to "perfect[] an appeal." The trial court vacated the order, then later sustained Coleman's motion to suppress once again, explicitly "adopting" Coleman's "*argument*," "on 4th amendment [sic] grounds," that:

> there was no probable cause to arrest [Coleman] for distribution of cocaine in Chesterfield County; that had they made an arrest for distribution or possession of cocaine in Colonial Heights, though that would have been a statutory violation, the case law says the

---

[3] In his brief before the trial court, Coleman also argued that his confession was not made freely and voluntarily.

- 4 -

statutory violation does not bring into play the fruits of the poisonous tree argument.

But in this case, since the probable cause is that he possessed cocaine at a convenience store in Colonial Heights, there was never probable cause developed for distribution in Chesterfield. So it is a different argument in the line of cases that follows essentially, Judge.[4]

(Emphasis added).

## II.  Analysis

On appeal, the Commonwealth argues that the trial court erred in finding police lacked the requisite probable cause to arrest Coleman.  We agree and reverse the trial court's decision.

On review of a motion to suppress,

"[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996)).  However, we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

The Commonwealth argues specifically that Detective Henderson had probable cause to arrest Coleman after he "saw the hand-to-hand transaction" and after another officer saw suspected cocaine in Coleman's hand.  Thus, the Commonwealth contends the officers "properly arrested [Coleman] for possession of cocaine in Colonial Heights" and the fact that the officers "were

---

[4] Based upon Coleman's argument in this regard, as well as the trial court's ruling adopting the argument as the basis for its ruling, it appears that Coleman abandoned any argument that his statement was not made freely or voluntarily.

outside their territorial jurisdiction is of no *constitutional* moment." (Emphasis in original).

Coleman responds that Detective Henderson arrested Coleman for "distribution of cocaine in Chesterfield County while in Colonial Heights" although "he did not have probable cause in Chesterfield County." Accordingly, Coleman argues the arrest, and any fruits derived therefrom, were in violation of his constitutional rights.

"A police officer has authority to arrest within the jurisdiction in which the officer serves or within statutorily defined extensions of that area." Weaver v. Commonwealth, 29 Va. App. 487, 490, 513 S.E.2d 423, 425 (1999). Code § 19.2-250(A) provides:

> Notwithstanding any other provision of this article and except as provided in subsection B hereof, the jurisdiction of the corporate authorities of each town or city, in criminal cases involving offenses against the Commonwealth, shall extend within the Commonwealth one mile beyond the corporate limits of such town or city; except that such jurisdiction of the corporate authorities of towns situated in counties having a density of population in excess of 300 inhabitants per square mile, or in counties adjacent to cities having a population of 170,000 or more, shall extend for 300 yards beyond the corporate limits of such town or, in the case of the criminal jurisdiction of an adjacent county, for 300 yards within such town.

Assuming Detective Henderson violated this statute by arresting Coleman "more than 300 yards" outside of his county of jurisdiction, we find that the arrest was otherwise constitutional.

In Penn v. Commonwealth, 13 Va. App. 399, 412 S.E.2d 189 (1991), aff'd, 244 Va. 218, 420 S.E.2d 713 (1992), we explicitly held that the exclusionary rule adopted in Mapp v. Ohio, 367 U.S. 643 (1961), does not operate to exclude evidence from an arrest that is statutorily defective, but otherwise constitutionally valid. Penn, 13 Va. App. at 406-07, 412 S.E.2d at 193. The Virginia Supreme Court has rejected the invitation to adopt a state exclusionary rule for arrests that are constitutionally valid but which may violate a statutory provision. See Horne v. Commonwealth, 230 Va. 512, 519, 339 S.E.2d 186, 191 (1986). Therefore, in this case, even if Coleman's arrest was

- 6 -

"illegal" because Detective Henderson was a Chesterfield County police officer who had exceeded his authority to arrest in Colonial Heights, the dispositive issue is whether Detective Henderson's arrest of Coleman violated any federal constitutional guarantees which the exclusionary rule, as enunciated in Mapp, was designed to protect.

As a general rule of constitutional law,

> [a] police officer may detain an individual to conduct a brief investigation without violating the Fourth Amendment when the officer has a reasonable, articulable suspicion that a person is engaging in, or is about to engage in criminal activity. The officer's justification for stopping the individual need not rise to the level of probable cause, but must be based on more than an "inchoate and unparticularized suspicion or 'hunch.'"

O'Banion v. Commonwealth, 33 Va. App. 47, 62-63, 531 S.E.2d 599, 606-07 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Moreover, an officer may make a warrantless arrest if he has probable cause to believe the arrestee has committed a crime. Thompson v. Commonwealth, 10 Va. App. 117, 121, 309 S.E.2d 198, 201 (1990).

> "As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control."

DePriest v. Commonwealth, 4 Va. App. 577, 584, 359 S.E.2d 540, 543 (1987) (quoting Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979)) (other citations omitted).

Here, Detective Henderson: 1) observed Coleman stop briefly at the Par Three Motel in Chesterfield County, which was an area known for drug activity; 2) observed Coleman drive his car to the Pilot Gas Station in Colonial Heights; 3) observed Coleman's passenger exit the car and another man who was waiting at the station get into the car; and 4) observed a hand-to-hand

transaction between the two men. At that point in time – in terms of the Fourth Amendment - Detective Henderson had reasonable suspicion to detain Coleman and was constitutionally permitted to conduct a brief investigation to either confirm or dispel his suspicions. O'Banion, 33 Va. App. at 62-63, 531 S.E.2d at 606-07. Once Henderson's fellow officer observed what he believed to be cocaine in Coleman's hand and communicated this information to Henderson, Detective Henderson had sufficient probable cause to arrest Coleman for that particular crime. Thompson, 10 Va. App. at 121, 309 S.E.2d at 201.

Indeed, Coleman's contention below and on appeal that Detective Henderson arrested Coleman for "distribution of cocaine in Chesterfield County" is a misstatement belied by the record.[5] Detective Henderson explicitly testified that he arrested Coleman for "possession of cocaine," *before* he read him his Miranda rights.[6] Detective Henderson further testified that Coleman gave his statement, admitting to selling cocaine in Chesterfield County, in conjunction with the reading of his Miranda rights. Thus, it is clear that Detective Henderson arrested Coleman

---

[5] Coleman contended during oral argument that the trial court made a factual finding that the Colonial Heights arrest was a "*de facto*" arrest for distribution of cocaine in Chesterfield County. However, the record reflects that the trial court merely adopted Coleman's "argument" on "4th amendment [sic] grounds." The trial court did not render specific factual findings or rule on the credibility of Detective Henderson's uncontradicted testimony.

[6] We note that Detective Henderson testified that, as he approached the car, "it was communicated to [him] that there was cocaine in [Coleman's] pants pocket," and stated that it was at that time that he placed Coleman under arrest. This testimony is at odds with his earlier testimony that the cocaine was observed in Coleman's hand and that, upon a search of Coleman's person, only money and a cellular phone were found. Nevertheless, even assuming that the officers searched Coleman prior to arresting him, Coleman has never contended that he was unconstitutionally searched. Accordingly, any such claim is waived for purposes of appeal. See Rule 5A:18; see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court. Rule 5A:18 applies to bar even constitutional claims." (citations omitted)).

for his criminal activity in Colonial Heights – not for his criminal activity in Chesterfield County.

It logically follows that, although statutorily defective, the arrest was not unconstitutional.[7]

Even were we to assume (without deciding) that Detective Henderson initially arrested Coleman for distribution of cocaine in Chesterfield County, it is clear that the arrest would have nevertheless remained constitutional. We have specifically recognized that:

> Probable cause . . . turns only on "'objective facts,' not the 'subjective opinion' of a police officer." Golden v. Commonwealth, 30 Va. App. 618, 625, 519 S.E.2d 378, 381 (1999) (citations omitted). As a result, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Whren v. United States, 517 U.S. 806, 813 (1996) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Slayton v. Commonwealth, 41 Va. App. 101, 109, 582 S.E.2d 448, 451 (2003). There can be little doubt, on these facts, that "viewed objectively," the circumstances provided Detective Henderson with the requisite probable cause to arrest Coleman for the Colonial Heights offense. Thus, although statutorily defective, the arrest was not unconstitutional on this alternative ground.[8]

Once Detective Henderson arrested Coleman, Coleman gave Detective Henderson the incriminating statement concerning the Chesterfield County offense. That statement, given after a constitutionally proper arrest, provided Detective Henderson with the requisite probable cause to arrest and charge Coleman with the Chesterfield County offense of possession of cocaine with intent to distribute. Accordingly, the arrest and related charge did not operate to invoke the

---

[7] We nevertheless reiterate that violations of state procedural statutes are viewed by the courts with disfavor. Campbell v. Commonwealth, 194 Va. 825, 831, 75 S.E.2d 468, 472 (1953); Penn, 13 Va. App. at 407, 412 S.E.2d at 194.

[8] Because we find the arrest constitutional on these grounds, we do not reach the Commonwealth's argument concerning the propriety of the arrest as a "citizen's arrest."

protections of the exclusionary rule.  <u>Penn</u>, 13 Va. App. at 406-07, 412 S.E.2d at 193.  We thus find that the trial court plainly erred in adopting Coleman's argument that "there was never probable cause developed for distribution in Chesterfield" and in excluding the related evidence.  For these reasons, we reverse the trial court's ruling suppressing evidence against Coleman and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>