COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Raphael and Frucci
Argued by videoconference


DAVID MARSHALL WHITE

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
v.      Record No. 1341-23-4
SEPTEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Gary H. Smith for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General; Collin Chayce Crookenden, Assistant
Attorney General, on brief), for appellee.


A jury convicted David Marshall White ("appellant") of trespassing after having been

forbidden to do so, in violation of Code § 18.2-119.  Appellant argues that the Commonwealth

failed to prove that his brother had, or asserted, the authority to bar appellant from their mother's

house.  Finding no error, we affirm the trial court's judgment.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Appellant and Jeffrey White, his older brother, are both sons of Lillian White, who was 82 years old at the time of trial in May 2023. Lillian lived at her house in Alexandria while Jeffrey split his time between New York City and Alexandria. In fall 2019, Jeffrey learned that Lillian was having significant memory loss, needed more help making decisions, and struggled to take care of herself or maintain the house.

In July 2019, Lillian executed a durable financial power of attorney giving Jeffrey the "full power to handle and manage [her] affairs." The powers granted included, "without limitation," the power to "[p]erform all acts related to [her] property and affairs as [she] could if acting personally." The document also specifically granted Jeffrey the authority to manage Lillian's "real property."

Jeffrey viewed the power of attorney document, and based on this document, Jeffrey began exercising his authority under the document in fall 2019. He first acquired her key to the house. He then "de-hoard[ed] the house," replaced the toilets and fixed the shower, installed a security camera on the front door, and put combination locks on doors to two of the rooms, one of which was Jeffrey's bedroom. He filed property tax abatement paperwork, paid property taxes and bills, connected a phone, and placed his own name on the house's utility accounts.

In December 2021, Jeffrey gave appellant a set of keys, and let him visit Lillian at the house. But in March 2022, because of appellant's "behavior and habits,"[1] Jeffrey told appellant that he was no longer allowed to visit Lillian without Jeffrey being present. According to Jeffrey, appellant "understood completely," "was aware that trust had been lost," and agreed to Jeffrey's parameters. That same day, Jeffrey asked appellant to return the keys, and appellant did so.

---

[1] Jeffrey testified that appellant had "beaten up" both of his parents a few years prior.

On March 12, 2022, appellant told Jeffrey that he intended to go to Alexandria. Jeffrey told appellant "that he's not to go to mom's house." Appellant responded that he had "another place to stay" and was "not going to stay there." Later that day, the security camera on the front door showed appellant carrying his daughter inside the house. Lillian could be heard saying, "You can't . . . I'll call the police." Appellant responded, "Okay, you do it . . . you call the cops on your son."

Later that evening, Lillian called Jeffrey and told him that appellant was at the house and needed access to one of the bedrooms. In the background, Jeffrey heard appellant "screaming very loudly at" Lillian that he had told her "not to tell [Jeffrey] anything." Jeffrey also heard appellant yelling, "it's her fault" and "you don't know what's going on." Jeffrey told Lillian to ask appellant to leave because he was not supposed to be there.

After trying to resolve the situation via text and attempting to get a protective order, Jeffrey researched how he could have appellant arrested for trespass. He "figured out that perhaps [his] power of attorney would allow [him] to call the cops on behalf of" Lillian. He contacted the police in June 2022 and obtained criminal warrants against appellant. Jeffrey had not realized that he had the ability to have appellant "arrest[e]d for trespass in this case" until June 2022.

At trial, appellant stipulated that he was at the house on March 12, 2022, even though Jeffrey had "told [him] to stay away from the house," because he "d[id]n't really care what [Jeffrey] says." Appellant stated that Jeffrey never mentioned the power of attorney or otherwise stated that he had the authority to ban appellant from the house. When asked whether he complied with Jeffrey's request to return the keys, appellant clarified that he "did not give [Jeffrey] the keys per his request," but returned them because he was "tired of hearing [Jeffrey's]

mouth." Appellant maintained that on the night of March 12, 2022, Lillian let appellant and his daughter into the house and that it was Lillian's idea to unlock one of the bedrooms.

The jury convicted appellant of trespassing. This appeal followed.

## ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### A. Authority to Ban

Appellant argues that there was insufficient evidence to establish that Jeffrey had the authority to ban appellant from the house.

An individual violates Code § 18.2-119 when he "without authority of law goes upon or remains upon the lands, buildings or premises of another . . . after having been forbidden to do so . . . by the [property's] owner, lessee, custodian, or the agent of any such person, or other person lawfully in charge thereof." In forbidding appellant from going to the house, Jeffrey was

acting as Lillian's agent under her durable power of attorney.[2]  Powers of attorney are strictly construed in Virginia.  *Jones v. Brandt*, 274 Va. 131, 137 (2007).  "[I]f a power of attorney grants to an agent authority to do all acts that a principal could do, the agent has the general authority described in [Code] § 64.2-124 and §§ 64.2-1625 through 64.2-1637."  Code § 64.2-1622(C).  In turn, Code § 64.2-1625(A)(5) allows an agent acting under of "a power of attorney granting general authority with respect to real property" to "[m]anage or conserve an interest in real property or a right incident to real property."  And "[t]he right to exclude others is generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'"  *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 581 (2017) (alteration in original) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984)).

Lillian's durable power of attorney appointed Jeffrey to act as her agent and gave him the power to "[p]erform all acts related to [her] property and affairs as [she] could if acting personally."  As owner of the house,[3] Lillian had the right to exclude others from entering.  Accordingly, acting as her agent, Jeffrey had this same power.  Thus, there was sufficient evidence that as Lillian's agent, Jeffrey had the authority to exclude appellant from the house under the durable power of attorney.

---

[2] The Commonwealth argues that Jeffrey "had the same rights that a co-owner, tenant, custodian, or 'lawful possessor' would in prohibiting anyone from entering" the house.  While the Commonwealth does not develop this argument further, there was sufficient evidence that Jeffrey had the authority to ban appellant from the house under this theory as well.  Jeffrey obtained the key to the house, made repairs and improvements, and lived there part-time.  He also had his name on the utility bills, and paid the relevant bills and property taxes.  As such, Jeffrey qualifies as a "custodian . . . or other person lawfully in charge" of the house.  Code § 18.2-119; *see Custodian of Property*, *Black's Law Dictionary* (12th ed. 2024) ("A custodian responsible for managing real or personal property.  The custodian's duties generally include securing, safeguarding, and maintaining the property in the condition received and accounting for any changes in it.").  Thus, Jeffrey's status as custodian also gave him the authority to bar appellant from the house.

[3] Neither party contests that Lillian is the owner of the house.

B.  Intent

Appellant also contends that the evidence was insufficient to show that Jeffrey asserted any authority to bar appellant from the house and that as a result, the Commonwealth failed to establish that appellant had the requisite criminal intent because he did not know that Jeffrey had such authority.

"Intent . . . is a state of mind which may be shown by a person's conduct or by his statements." *Austin v. Commonwealth*, 60 Va. App. 60, 66 (2012) (quoting *Vincent v. Commonwealth*, 276 Va. 648, 652 (2008)).  "Although Code [§] 18.2-119 is silent as to intent, the case law in Virginia has uniformly construed the statutory offense of criminal trespass to require a willful trespass." *O'Banion v. Commonwealth*, 33 Va. App. 47, 56 (2000), *overruled in part on other grounds by Harris v. Commonwealth*, 274 Va. 409, 415 (2007).  "'Willful' . . . denotes 'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'" *Ellis v. Commonwealth*, 29 Va. App. 548, 554 (1999) (citation omitted) (quoting *Snead v. Commonwealth*, 11 Va. App. 643, 646 (1991)).  "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Austin*, 60 Va. App. at 66 (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)).  "[O]ne who enters or stays upon another's land under a bona fide claim of right cannot be convicted of trespass," *O'Banion*, 33 Va. App. at 56, but such a claim "must rise to the level of authorization," *id.* (quoting *Reed v. Commonwealth*, 6 Va. App. 65, 71 (1988)).

Here, there is ample evidence in the record that Jeffrey asserted his authority to exclude appellant from the house, and appellant's own actions and statements prove his knowledge that he was not authorized to be there.  Appellant himself testified that Jeffrey had told him "to stay away from the house," but that he disregarded that instruction because he did not care what

Jeffrey said. In early March, Jeffrey asked appellant to return the keys, and appellant did so.[4] Appellant also agreed to Jeffrey's parameters surrounding future visits to the house, and "was aware that trust had been lost." Further, when Jeffrey told appellant on March 12, 2022, that appellant was "not to go to mom's house," appellant confirmed that he would not stay at the house and had "another place to stay." Appellant thus acknowledged Jeffrey's assertion of his authority to determine when, and whether, he was allowed at the house.

Additionally, when Lillian called Jeffrey saying that appellant was in the house, Jeffrey heard appellant "screaming very loudly" to Lillian, "I told you not to tell [Jeffrey] anything." The fact that appellant desired to keep Jeffrey from learning he was at the house supports the reasonable inference that appellant was aware he was not supposed to be there. The jury could therefore reasonably conclude that appellant willfully disregarded Jeffrey's express instruction to "not go to mom's house."

Appellant argues, however, that Jeffrey himself "never believed that he had" the authority to bar appellant from the house prior to March 12, 2022, because Jeffrey only determined that he could have appellant arrested on a later date, after doing some research. Thus, appellant argues, he "believed he had every right to visit his mother on March 12, 2022." We find no merit in appellant's assertion.

First, we do not find that Jeffrey's knowledge regarding whether he could have appellant arrested for trespass relevant in examining whether appellant had the requisite criminal intent to

---

[4] Appellant argues that he only returned the keys to avoid Jeffrey's "bullying." But the jury was entitled to infer that by asking for the keys back, Jeffrey was asserting his authority, and by complying, appellant acknowledged that authority and understood that he was no longer allowed at the house. *See Pease v. Commonwealth*, 39 Va. App. 342, 354 (2002) (en banc) ("If alternative inferences are possible, the jury resolves the differences and determines which inferences are reasonably drawn."). These reasonable inferences support the jury's conclusion, implicit in its decision to convict appellant, that appellant knew he was not authorized to be at the house.

trespass on Lillian's property. While it is true that "one who enters or stays upon another's land under a bona fide claim of right cannot be convicted of trespass," *O'Banion*, 33 Va. App. at 56, the evidence at trial demonstrated that appellant possessed no bona fide claim of right and instead had knowledge Jeffrey had the authority to prohibit him from the house—Jeffrey set the parameters for appellant's visits to the house; when asked by Jeffrey, appellant returned the keys to the house; and when Jeffrey confronted appellant about staying at the house, appellant told Jeffrey that he would not stay at the house. This evidence indicates that appellant was aware that Jeffrey had the authority to prohibit him from entering the house. Second, even accepting appellant's argument that Jeffrey's knowledge of his authority to prohibit appellant from the house was relevant as to appellant's intent, while Jeffrey had not realized that he had the ability to have appellant arrested for trespass until June 2022, he was aware of his authority under the power of attorney by at least fall 2019, when he started to exercise his authority under the document. Although Jeffrey was unaware of his legal rights regarding whether he could obtain a trespass charge against his brother, he was aware that he possessed the authority to prohibit appellant from accessing the house and exercised this right. Accordingly, we reject appellant's argument that Jeffrey's knowledge regarding the authority to bar appellant from the house had any impact on appellant's own knowledge that he was not permitted to be at the house.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*