COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


BRUCE LAMARR SYKES
                                            OPINION BY
v.    Record No. 2838-00-1           JUDGE ROBERT P. FRANK
                                          DECEMBER 27, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                  James A. Cales, Jr., Judge

        Joseph R. Winston, Special Appellate Counsel
        (Public Defender Commission, on brief), for
        appellant.

        Susan M. Harris, Assistant Attorney General
        (Randolph A. Beales, Attorney General, on
        brief), for appellee.


    Bruce Lamarr Sykes (appellant) was convicted after a bench

trial of possession of heroin, in violation of Code § 18.2-250.

On appeal, appellant contends the trial court erred in denying his

motion to suppress because he was detained without reasonable

suspicion or probable cause.  He argues, therefore, the search

incident to arrest was illegal.  For the reasons stated herein, we

affirm the conviction.

                    I.  BACKGROUND

    Several City of Portsmouth police officers, members of the

tactical response unit, were on routine patrol in two or three

unmarked vehicles on the night of February 19, 2000.  They saw a

group of males on Lancing Avenue who dispersed as the police cars

rounded the corner.  Appellant, a member of the group, began walking north.

Officer Steve T. Goldman exited his vehicle and approached appellant.  Goldman was one of "at least three other" police officers who approached members of the group.  All the officers were in plain clothes, but "most of [them] had a black vest on with police markings on it."  No one activated any sirens or emergency lights.

Appellant was "probably ten yards at the most - maybe five yards - away from [the police] vehicles."  Goldman approached appellant and "asked him if [he] could see his identification."  Appellant agreed and "presented [Goldman] with what appeared to be a valid [identification card] that identified him as Bruce Lamarr Sykes."

After further conversation, Goldman asked appellant if he could search him, and appellant said, "Yes."  Goldman then said, "You don't have any weapons on you?" and appellant said, "No."  Goldman asked, "You don't mind if I check you for weapons?"  Appellant again answered, "No."  Finally, Goldman inquired, "What about drugs or narcotics; do you have any of that on you?"  Appellant replied, "No."

Prior to sticking his hand in appellant's pocket, Goldman asked if there was anything sharp inside, "a needle, razor blade that might cut me?"  Appellant said, "No."  Goldman then put his hand in appellant's right rear pocket and felt a razor blade with

-

his fingers. He pulled it from the pocket. Appellant kept "changing his weight on either foot, which is, [in Goldman's] experience, characteristic of someone being nervous." Goldman then "asked [appellant] to walk back over to my vehicle" because appellant had "managed to maneuver the two of us [Goldman and appellant] away from the rest of the team at the site."

As they were walking toward the vehicle, appellant "broke from [Goldman's] grasp and began running." Officer R.D. Pisle, who was "some distance away with another officer" assisted Goldman in catching appellant. The officers then arrested appellant for carrying a concealed weapon -- the razor blade.

During a search incident to the arrest, Pisle recovered three heroin capsules inside "a little piece of paper" taken from appellant's pocket. Appellant was charged with possession of a concealed weapon, in violation of Code § 18.2-308, and possession of heroin, in violation of Code § 18.2-250.

At trial, appellant moved to suppress the heroin, arguing the police had no reasonable suspicion to seize him initially. He contended Goldman unconstitutionally seized him in violation of the Fourth Amendment when he asked for identification. The Commonwealth argued the encounter was consensual and, therefore, no seizure occurred.[1]

---

[1] The Commonwealth did not argue the motion was inappropriate under Code § 19.2-266.2.

-

Appellant also moved to strike the evidence on the concealed weapon charge, contending a razor is not a "weapon" under Code § 18.2-308. The trial court then asked appellant's counsel:

> Even if I agree with your [argument], that the razor blade in this case they didn't prove was a concealed weapon, [sic] they still have probable cause based on the blade, don't they, and isn't that for the Court to decide and for the officer to act upon probable cause, and then I decide whether they've proven it beyond a reasonable doubt? If I rule they haven't proved beyond a reasonable doubt that a razor blade in this case was a concealed weapon, then don't they still have the second count?

Appellant's counsel replied:

> I think they do. I think if you rule that this is a consensual encounter and that that search was a part of a consensual encounter, yes. I think even though if it turns out that the conviction falls, I think if you rule that they had probable cause to arrest him for that, then they have a valid arrest and a valid search incident to that arrest.

The trial court sustained the motion to strike the concealed weapon offense. The court then implicitly denied the motion to suppress the evidence as a result of an illegal detention when it convicted appellant of the possession of heroin offense.

## II. ANALYSIS

Appellant argues his encounter with Goldman was not consensual. Even if the initial encounter and search were consensual, he contends the second search during which the heroin was found was unconstitutional because the officer did not have

-

probable cause to arrest him and to search incident to that

arrest.

The standard of review for such cases is clear.

> An assertion that a person was "seized,"
> within the meaning of the Fourth Amendment,
> presents a mixed question of law and fact
> that is reviewed de novo on appeal.
> Likewise, an assertion that the police
> lacked probable cause to arrest a defendant
> presents a question of both law and fact,
> which is reviewed de novo on appeal.
>
> In considering such questions, the appellate
> court is required to give deference to the
> factual findings of the trial court and to
> determine independently whether, under the
> law, the manner in which the evidence was
> obtained satisfies constitutional
> requirements.  The burden is on the
> defendant to show that the denial of his
> suppression motion, when the evidence is
> considered in the light most favorable to
> the Commonwealth, was reversible error.

McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545

(2001) (citations omitted).

### A.

> Fourth Amendment jurisprudence recognizes
> three categories of police-citizen
> confrontations:  (1) consensual encounters,
> (2) brief, minimally intrusive investigatory
> detentions, based upon specific, articulable
> facts, commonly referred to as Terry stops,
> see Terry v. Ohio, 392 U.S. 1 (1968), and
> (3) highly intrusive arrests and searches
> founded on probable cause.

Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744,

747 (1995).  If a reasonable person would feel free to ignore the

-

officer's questions and leave, then the encounter is consensual. United States v. Mendenhall, 446 U.S. 544, 555 (1980).

Whether a defendant gave an officer consent to search "is a factual question to be determined by the trier of fact," which receives great deference from this Court. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000). Factors to examine when determining whether an encounter was consensual include

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See Terry v. Ohio, [392 U.S. 1,] 19, n. 16 [(1968)]; Dunaway v. New York, 442 U.S. 200, 207, and n. 6; 3 W. LaFave, Search and Seizure 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

Mendenhall, 446 U.S. at 554-55. See also Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648-49 (1992).

The initial encounter between appellant and Goldman was consensual. While the officers wore some insignia of their office, no show of force was used when the police approached the group. No weapons were drawn. Only Officer Goldman approached appellant, while the others remained five to ten yards away. Goldman asked for and received permission before he searched appellant and found the razor. Nothing in the record indicates

-

Goldman asked his questions with a commanding voice or tone. The trial court's finding of consent is not clearly wrong.

Appellant argues, even if the encounter was consensual, the request for identification and the taking of the license constituted a seizure under the principles enunciated in Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000). We disagree.

In Reittinger, two armed deputies stopped and approached the car Reittinger was driving at night in a rural area. Id. at 236, 532 S.E.2d at 27. One deputy asked three times for permission to search the vehicle. Id. at 237, 532 S.E.2d at 27. Reittinger never explicitly gave his permission for the search, but instead got out of the car, at which point the deputy observed a bulge and began a pat-down search of Reittinger. Id. at 234, 532 S.E.2d at 26.

Unlike Reittinger, appellant was standing on the sidewalk, not driving a car. Appellant was approached by one officer in civilian clothing rather than by two uniformed officers standing on either side of him. Appellant was asked once if he would show the officer some identification, which he agreed to do and did; he was asked once for permission to search his person, which he immediately granted. Reittinger, on the other hand, was badgered with numerous requests for permission to search his car, which he never gave. Id. at 236-37, 532 S.E.2d at 27. This distinction is critical. See Dickerson v. Commonwealth, 35

-

Va. App. 172, 181, 543 S.E.2d 623, 628 (2001). While "'accusatory, persistent, and intrusive' questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required," appellant was not questioned in this manner. United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996) (quoting United States v. Little, 60 F.3d 708, 712 (10th Cir. 1995)).

Here, McCain is more analogous than Reittinger. In McCain, which involved an officer's request for and receipt of identification and permission to search a parked car, the Supreme Court held, "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure." 261 Va. at 491, 545 S.E.2d at 546. While appellant argues a request alone constitutes a seizure, McCain held it does not.

Like McCain, appellant was not seen driving a vehicle nor was he asked for identification pursuant to Code § 46.2-104. Only one officer approached McCain, as only Goldman approached appellant.

In McCain, the officer simply asked for some identification and then requested and received permission to search the car; the officer then requested permission to search McCain, which McCain would not give. Id. at 491, 545 S.E.2d at 546. Here, Officer Goldman asked once for some identification and for permission to search appellant, both of which were given. As

-

<u>McCain</u> concluded, this type of encounter does not constitute a seizure.  <u>Id.</u>

Clearly, the search that led to the discovery of the razor did not violate the Fourth Amendment.  However, that ruling does not necessarily apply to the second search, during which Goldman discovered the heroin.  Appellant argues the officer did not have probable cause to arrest him for carrying a concealed weapon because the word, "razor," in the statute does not include individual razor blades.  Therefore, he contends, Goldman's search was conducted without probable cause and incident to an unlawful arrest.

The trial court ruled, while the evidence did not prove appellant guilty of carrying a concealed weapon, the officer still had probable cause to arrest appellant because Goldman believed the razor blade was a concealed weapon.  We find the officer had probable cause to arrest appellant because a razor blade is a "weapon" under Code § 18.2-308.

Code § 18.2-308(A) prohibits any person from carrying

> about his person, hidden from common
> observation, (i) any pistol, revolver, or
> other weapon designed or intended to propel
> a missile of any kind; (ii) any dirk, bowie
> knife, switchblade knife, ballistic knife,
> <u>razor</u>, slingshot, spring stick, metal
> knucks, or blackjack; (iii) any flailing
> instrument consisting of two or more rigid
> parts connected in such a manner as to allow
> them to swing freely, which may be known as
> a nun chahka, nun chuck, nunchaku, shuriken,
> or fighting chain; (iv) any disc, of
> whatever configuration, having at least two

-

points or pointed blades which is designed to be thrown or propelled and which may be known as a throwing star or oriental dart; or (v) any weapon of like kind as those enumerated in this subsection . . . .

(Emphasis added.)

"'Although penal laws are to be construed strictly,'" Willis v. Commonwealth, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (quoting Huddleston v. United States, 415 U.S. 814, 831 (1974)), the plain language of a statute should not be ignored when examining the criminal code.  As this Court explained in Krampen v. Commonwealth:

> "Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation." Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992). "'Courts are not permitted to rewrite statutes.  This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied.'"  Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).  Accordingly, we must "'take the words as written'" . . . and give them their plain meaning. Adkins v. Commonwealth, 27 Va. App. 166, 169, 497 S.E.2d 896, 897 (1998) (quoting Birdsong Peanut Co. v. Cowling, 8 Va. App. 274, 277, 381 S.E.2d 24, 26 (1989)).

29 Va. App. 163, 167, 510 S.E.2d 276, 278 (1999).

Here, the statute is clear on its face.  "Any . . . razor" is explicitly included as a "weapon" in Code § 18.2-308.

-

Clearly, appellant carried a concealed weapon as prohibited by the statute.

Appellant does not deny he had a razor blade in his pocket, but rather contends a "razor" must have a handle to constitute a "weapon" under Code § 18.2-308. He bases this argument on O'Banion v. Commonwealth, 33 Va. App. 47, 531 S.E.2d 599 (2000). Neither the language of the statute nor O'Banion requires such a finding, however.

In O'Banion, after the police arrested O'Banion for trespassing, they found a steak knife and a box-cutter on his person. Id. at 54, 531 S.E.2d at 602-03. In finding both of these items were "weapons" under Code § 18.2-308, the Court noted, "[b]y its terms, the Code prohibits the carrying of a concealed razor or any weapon of like kind." Id. at 59, 531 S.E.2d at 605. The Court continued, explaining that a box-cutter, by incorporating a razor, fit within the definition of "razor" as a "weapon" that cannot be concealed under the statute. Id. at 60, 531 S.E.2d at 605. The Court did not define "razor" as a box-cutter but instead found a box-cutter was an example of a razor. See id. O'Banion essentially held that the statute did not simply proscribe a razor blade, but was expansive enough to include an object that incorporated a razor.

Although the Court cited a "traditional dictionary definition" of razor that defined the word as an "'instrument made with the cutting blade and handle in one,'" id. (quoting

-

Webster's Third New International Dictionary 1888 (1981)), the opinion did not find that a handle is a defining characteristic of a "razor."  O'Banion also did not hold that the Webster's definition is the exclusive one for purposes of Code § 18.2-308, but rather used Webster's as an example of a generally accepted definition that would include a box-cutter as a "razor."  Id.

The officer had probable cause to arrest appellant for carrying a concealed weapon when he discovered a razor in appellant's pocket.  The search incident to this arrest was valid.

For the reasons stated, we affirm the conviction for possession of heroin.

Affirmed.

-