COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


MICHAEL MAURICE WHITE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2091-02-1          JUDGE ROBERT P. FRANK
                                         JUNE 24, 2003
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                      S. Bernard Goodwyn, Judge

           Monte E. Kuligowski for appellant.

           Virginia B. Theisen, Assistant Attorney
           General (Jerry W. Kilgore, Attorney General),
           for appellee.


     Michael Maurice White (appellant) was convicted in a bench

trial of possession of a firearm while in possession of drugs, in

violation of Code § 18.2-308.4, and of possession of cocaine with

the intent to distribute, in violation of Code § 18.2-248.  On

appeal, he contends the trial court erred in finding him guilty of

these offenses because appellant was illegally seized.[1]  For the

reasons stated, we affirm the judgments of the trial court.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] This appeal is presented in an unusual posture because at
trial the Commonwealth did not object to the failure of
appellant to file a motion to suppress under Code § 19.2-266.2
nor to appellant's failure to object to the admissibility of the
evidence during the testimony.  See Sykes v. Commonwealth, 37
Va. App. 262, 266 n.1, 556 S.E.2d 794, 796 n.1 (2001).

BACKGROUND

Officer B. W. Shearin was on routine patrol on January 16, 2002, driving his patrol car in the area of Grady Crescent.  As he turned a corner, he saw appellant and another man standing in a parking lot of an apartment complex posted with "No Trespassing" signs.  One sign was within "a few feet" of appellant.

The apartment management had requested assistance from the police in enforcing its trespass policy.  Officer Shearin characterized the apartment complex as an area of "criminal activity."[2]

As Officer Shearin drove closer, he saw appellant reach his hand down toward the back tire of the vehicle beside which appellant was standing.  The officer characterized this activity as "suspicious."  When appellant stood up again, the officer could see both of appellant's hands.  The officer parked and got out of his car.  He approached appellant and the other man, asking, "how are you all doing?"  He also asked if either of them lived on the property.

At this point, appellant "leaned over his [own] shoulder," squinted, and "appeared to pick a number off a door."  He was looking at apartment numbered "59" on Grady Crescent.  When

---

[2] During his motion to strike the evidence, appellant's counsel conceded the area was "a place for known drug activity."

-

appellant turned back around, he told the officer that he lived at 59 Grady Crescent.

Officer Shearin then asked appellant if he had any identification, and appellant responded he did not. Officer Shearin asked appellant for "his information." Appellant replied his name was Michael Maurice Smith and that he lived at 59 Grady Crescent.

As Officer Shearin began to write down the information in his notebook, appellant ran away. The officer ran after him. Jeffrey Andrews, a citizen, saw the chase, stopped his truck, and pursued appellant. Officer Constanza arrived and followed Shearin and appellant. As they were running, Andrews saw appellant toss a chrome metallic object into the storm drain. Appellant then slipped and fell into the street. Officer Shearin was "right behind him."

After he fell, appellant lay face down with his arms underneath him, in the area of his stomach. Appellant "was moving back and forth." Officer Shearin repeatedly ordered appellant to show his hands as he grabbed appellant's arm. Officer Johnson, who had arrived at the scene earlier, tried to get the other arm from underneath appellant. The officers were "pulling him." Appellant was "rocking up and he was going against [the officers] putting [his arms] back down underneath him." Finally, the officers pulled appellant's arms from under his body.

-

As the officers stood appellant upright, they found "two bags of suspected marijuana and a plastic bag with six individually packaged suspected cocaine rocks on the concrete where [appellant's] hands and stomach were right there." Another officer recovered a .25 caliber, automatic handgun from the storm drain.

Appellant did not file a motion to suppress the cocaine or the firearm, pursuant to Code § 19.2-266.2, nor did he object to the introduction of these items. At the conclusion of the Commonwealth's case-in-chief, however, appellant moved to strike the Commonwealth's evidence because he was illegally detained. He argued the police had no reasonable suspicion to seize him. The Commonwealth responded to the Fourth Amendment argument, without objecting to appellant's failure to file a motion under Code § 19.2-266.2 or to appellant's failure to object to the introduction of the drugs and firearm. The trial court denied the motion to strike.

After appellant rested his case, he renewed his motion to strike the evidence, again based on his Fourth Amendment argument that the police had no reasonable suspicion to seize him. Again, the trial court denied the motion.

## ANALYSIS

On brief, appellant concedes the initial encounter was consensual.[3] However, he contends that the police had no reasonable suspicion to detain appellant after he fled and fell to the ground. Appellant does not contend he was seized prior to his fall.

Although the trial court found appellant's Fourth Amendment rights were not violated, it made no factual findings relevant to this issue. However, "[o]n appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). We review de novo the trial court's application of legal standards such as probable cause and reasonable suspicion. Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

---

[3] A consensual encounter occurs when police officers approach persons in public places "'to ask them questions,'" provided "'a reasonable person would understand that he or she could refuse to cooperate.'" United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (quoting Florida v. Bostick, 501 U.S. 429, 431 (1991)); see also Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989). Such encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing" and remain consensual "as long as the citizen voluntarily cooperates with the police." Wilson, 953 F.2d at 121.

-

It is undisputed that appellant was seized when the officers grabbed his arms while he was lying on the ground.  Our analysis, then, must focus on whether the police had reasonable suspicion to seize him at that time.

> In order to justify the brief seizure of a person by an investigatory stop, a police officer need not have probable cause; however, he must have "a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity."  Brown v. Texas, 443 U.S. 47, 51 (1979); accord Zimmerman [v. Commonwealth], 234 Va. [609,] 611, 363 S.E.2d [708,] 709; Leeth [v. Commonwealth], 223 Va. [335,] 340, 288 S.E.2d [475,] 478.  In determining whether a police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court must consider the totality of the circumstances.  United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Zimmerman, 234 Va. at 612, 363 S.E.2d at 709; Leeth, 223 Va. at 340, 288 S.E.2d 478.

Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722-23 (1997).  The totality of the circumstances in this case supports a finding of reasonable suspicion.

First, the officer observed appellant in a high crime area, acting suspiciously.  While leaning down toward a car tire could involve no illegal intentions, innocent behavior can be suspicious.  See Terry v. Ohio, 392 U.S. 1, 22-23 (1968) (noting that looking in store windows is not necessarily suspicious, but can become suspicious based on the circumstances).  Leaning down

-

toward a car tire, while in a high crime area, just as a uniformed officer comes into view, can be considered suspicious.

Additionally, when the officer approached appellant, who was in a posted "no trespassing" area, he could not provide an address in the housing complex except by squinting at a building behind him and giving the officer that address. While this behavior occurred during a consensual encounter, circumstances that develop during such an encounter can provide reasonable suspicion to detain a person. See, e.g., Dickerson v. Commonwealth, 35 Va. App. 172, 182, 543 S.E.2d 623, 628 (2001), aff'd, ___ Va. ___, ___ S.E.2d ___ (June 6, 2003) (explaining that probable cause can develop during a consensual encounter). While a person can forget his addresses, such "forgetfulness" while standing in a marked "no trespassing" area can be suspicious, especially when, as here, the person could not provide identification to confirm he actually lived at that address.

Another circumstance supporting the trial court's finding of reasonable suspicion is appellant's flight. On appeal, appellant argues his flight was simply an exercise of his right to end a consensual encounter. While he is correct that he had the right to end the encounter with the officer, his manner in ending that encounter was suspicious.

Flight clearly is suspicious behavior. As the Supreme Court noted, "Headlong flight -- wherever it occurs -- is the

-

consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). While appellant had a right to end the encounter, his sudden flight while Officer Shearin was writing down his information constituted suspicious behavior.

Appellant's behavior when he fell also provided the officers with another circumstance on which to develop reasonable suspicion of criminal wrongdoing. The placement of appellant's hands and his movement while on the ground were unusual, suggesting he was attempting to remove something from his clothing. We have found previously that such behavior can provide reasonable suspicion for the police to act. See Welshman v. Commonwealth, 28 Va. App. 20, 34-35, 502 S.E.2d 122, 129 (1998) (en banc).

As in the recently decided case of Whitfield v. Commonwealth, the totality of the circumstances here provided the officer with "a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity." 265 Va. 358, 361, 576 S.E.2d 463, 465 (2003). As in Whitfield, Officer Shearin observed appellant "apparently trespassing" in a high crime area, and appellant ran away. Id. at 362, 576 S.E.2d at 465. Officer Shearin had the additional factors, missing in Whitfield, of appellant's reaching to the

-

tire after he saw the officer and appellant's strange behavior after he fell.

We find, based on the totality of the circumstances, appellant was not illegally seized.

<u>Affirmed.</u>