COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Felton and Haley
Argued at Chesapeake, Virginia


LARRY MARTIN HAYES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0041-05-1                      JUDGE JAMES W. HALEY, JR.
                                                    MARCH 7, 2006
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            Stephen C. Mahan, Judge

          Ben Pavek for appellant.

          Susan M. Harris, Assistant Attorney General (Judith Williams
          Jagdmann, Attorney General; Paul C. Galanides, Assistant Attorney
          General, on brief), for appellee.


        Found guilty of possession of a firearm by a convicted felon and possession with intent to

distribute less than one-half ounce of marijuana, appellant maintains the trial court erred in

finding his encounter with police consensual, rather than an illegal seizure, and, accordingly,

erred in denying his motion to suppress.  We affirm.

                                            I.

        In determining whether or not the trial court properly denied appellant's motion to suppress,

"we consider the evidence and all reasonable inferences flowing from that evidence in the light

most favorable to the Commonwealth, the prevailing party at trial."  Jackson v. Commonwealth,

267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth, 259 Va. 470, 475,

525 S.E.2d 921, 923-24 (2000)).

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.

The uncontradicted facts can be succinctly stated.

At approximately 6:20 p.m. on March 23, 2004, Officer James Thorson of the Virginia Beach Police Department received an anonymous phone call advising him that two males were selling drugs outside of 5739 East Hastings Arch. The caller told Officer Thorson that one of the males was "wearing a black coat and a blue hat and [had] braided hair." Thorson and Officer Durkee, both in uniform, responded to the scene and saw appellant, precisely matching that description, "standing on the curb talking on his cell phone" in front of 5739 East Hastings Arch. The front yard at that address was filled with trash. Other individuals, some "juveniles" and "some of [appellant's] siblings," were in the immediate vicinity.

The officers approached appellant, one standing five feet to his left and the other five feet to his right. Officer Thorson said, "I need to talk to you for a second. Please get off the phone." Appellant briefly continued his phone conversation and said "some goodbyes." The officer asked appellant if he lived at 5739 East Hastings Arch, and appellant replied, "Yes." After inquiring about the trash in the yard, Officer Thorson asked appellant for identification, which he produced. Officer Thorson then asked appellant "if he had anything illegal on him." Appellant immediately responded that "he had a .38 in his back pocket." The foregoing constitutes the entire conversation between Officer Thorson and the appellant. Officer Durkee said nothing to appellant. Though armed, neither officer had displayed his weapon.

When the appellant stated he had a gun, Officer Thorson "grabbed his hands just so he wouldn't reach for the gun. Then I asked him if he had a concealed weapon permit. He said No,

- 2 -

and at that time I placed him under arrest."[1]  The subsequent search produced the firearm, a knife, marijuana, and over $500 cash.

Appellant moved to suppress the firearm and the drugs, alleging they were the product of an illegal seizure "in violation of the Fourth Amendment."  The trial court denied the motion, finding the interaction with the police was "a consensual encounter on the sidewalk" in front of 5739 East Hastings Arch.  Appellant was sentenced to five years in the penitentiary on the weapons charge, with three years suspended, and to twelve months in jail on the drug charge, fully suspended.

III.

"On appeal, we apply a *de novo* standard of review in determining whether a person has been seized in violation of the Fourth Amendment."  Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citing McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001)).  "However, we also must review findings of historical fact for clear error and give due weight to inferences drawn from those facts."  Id. (citing Ornelas v. United States, 517 U.S. 690, 699 (1996) (additional citation omitted)).

A consensual encounter between a citizen and law enforcement officers does not constitute a seizure and, accordingly, does not actuate Fourth Amendment protections.  Florida v. Bostic, 501 U.S. 429, 434-35 (1991); Londono v. Commonwealth, 40 Va. App. 377, 399, 579 S.E.2d 641, 651 (2003); McGee v. Commonwealth, 25 Va. App. 193, 199, 487 S.E.2d  259, 262 (1997) (en banc).  Generally speaking, "a consensual encounter does not require any justification

---

[1] Appellant does not challenge the constitutional propriety of Officer Thorson grabbing appellant's "hands just so he wouldn't reach for the gun."  Indeed, appellant advised he was carrying a concealed weapon.  Accordingly, the officer had more than a reasonable suspicion "that appellant was in possession of a concealed weapon and thus reasonably feared for his safety."  Hatcher v. Commonwealth, 14 Va. App. 487, 492, 419 S.E.2d 256, 259 (1997).

and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 665 (2004).

It is established "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Bostic, 501 U.S. at 434. Likewise, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984). "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable searches merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002). Such encounters are consensual.

While an encounter initially consensual may evolve into a seizure, such a transformation does not occur unless "'a reasonable person would have believed that he was not free to leave.'" California v. Hodari D., 499 U.S. 621, 628 (1991) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). The "reasonable person" analysis provides an objective measure that does not "vary with the state of mind of the particular individual being approached by law enforcement officers." Weschler v. Commonwealth, 20 Va. App. 162, 170, 455 S.E.2d 744, 747 (1995) (citations omitted). Such analysis involves consideration of "all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." Bostic, 501 U.S. at 439. The inquiry is one into "the totality-of-the-circumstances." United States v. Ringold, 335 F.3d 1168, 1173 (10th Cir.) (citations omitted), cert. denied, 540 U.S. 1026 (2003).

Relevant circumstances include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of

language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554. This Court has recognized the constitutional import of Mendenhall circumstances, as has the Supreme Court of Virginia. See Baldwin v. Commonwealth, 243 Va. 191, 196-98, 413 S.E.2d 645, 647-49 (1992); Londono, 40 Va. App. at 398-99, 579 S.E.2d at 651; Andrews v. Commonwealth, 37 Va. App. 479, 490, 559 S.E.2d 401, 407 (2002); Dickerson v. Commonwealth, 35 Va. App. 172, 179, 543 S.E.2d 623, 627 (2001), aff'd, 266 Va. 14, 581 S.E.2d 195 (2003).

Additional circumstances for consideration include the following: (1) the duration of police inquiry, United States v. Place, 462 U.S. 696, 709 (1983); (2) "the number of police officers . . . [and] . . . the retention of documents requested by an officer," Harris, 266 Va. at 32, 581 S.E.2d at 209; (3) the proximity of the police to the citizen, Sykes v. Commonwealth, 37 Va. App. 262, 268, 556 S.E.2d 794, 797 (2001); (4) "the manner in which [incriminating] questions were posed," Ringold, 335 F.3d at 1173; (5) whether, "a law enforcement officer, by physical force, or some display of authority, restrains in some manner a citizen's freedom of movement," McCain, 261 Va. at 490-91, 545 S.E.2d at 545;[2] (6) whether the questions are accusatory, Davis v. Commonwealth, 37 Va. App. 421, 431-32, 559 S.E.2d 374, 379 (2002) ("Where the police direct a specific allegation of criminal wrongdoing . . . is highly significant among the totality of factors in determining whether an encounter . . . is consensual."); see also McGee, 25 Va. App. at 200, 487 S.E.2d at 262; and finally, (7) "the failure to affirmatively inform [a citizen] that he was free to go does not by itself require a finding that the ensuing encounter was non-consensual." Harris, 266 Va. at 32, 581 S.E.2d at 209. See also Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).

---

[2] Restraint of a citizen's freedom of movement includes blocking access to a home or to a street. Barkley v. Commonwealth, 39 Va. App. 682, 694, 576 S.E.2d 234, 239-40 (2003).

IV.

We apply these indicators to the facts of this case.

We initially note that the encounter occurred in a public place, that is, on the "curb" in front of 5739 East Hastings Arch, and, as the trial court found, "on the sidewalk" before that address. Several children were playing in the front yard. Only two officers, Thorson and Durkee, were involved, each standing five feet from the appellant. The latter officer had no conversation whatsoever with the appellant.[3] Even though the officers were in uniform and armed, neither displayed a weapon.[4] Officer Thorson's first words to appellant were not by "language or tone of voice" commanding or intimidating. Indeed, he merely told appellant he wanted to talk and said to him, "*Please* get off the phone." (Emphasis added).[5] Thereafter, Officer Thorson asked appellant if he lived at that address and requested identification. As noted above, " a request for identification . . . does not . . . constitute a Fourth Amendment seizure."

---

[3] Apparently a third officer was somewhere on the scene, but not in any proximity to appellant.

[4] In Drayton, 536 U.S. at 204-05, the Court noted that:

> Officers are often required to wear uniforms and in many instances this is a cause for assurance, not discomfort. Much the same can be said of sidearms. That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm is thus unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon.

[5] In Baldwin, the Virginia Supreme Court held that a police officer had not seized two individuals by "call[ing] towards" them and asking them to walk back toward him. At trial, the officer "acknowledged that 'maybe [he] did call towards - - call for them' as they were 'walking back towards the apartments.'" 243 Va. at 194, 413 S.E.2d at 646. A defense witness who had left a party with the defendant testified that "'the officer . . . asked [them] to come towards . . . him and [] asked [them] some questions and he asked [them] if [they] had any ID.'" Id. The defendant testified that "[t]he officer 'put a big floodlight on [them] . . . and told [them] to come here, said you two, come over here.'" Id. at 194, 413 S.E.2d at 646-47. The Court held, "[W]e find no evidence of . . . 'the language or tone of voice indicating that compliance with the officer's request might be compelled.'" Id. at 199, 413 S.E.2d at 649 (quoting Mendenhall, 446 U.S. at 554).

Delgado, 466 U.S. at 216.  See also Florida v. Royer, 460 U.S. 491, 501 (1983) (plurality opinion); McCain, 261 Va. at 492, 545 S.E.2d at 546; McLellan v. Commonwealth, 37 Va. App. 144, 152, 554 S.E.2d 699, 703 (2001).

Officer Thorson next asked appellant whether "he had anything illegal on him."  Courts have repeatedly held that that question does not render an encounter non-consensual.  "[L]aw enforcement officers do not violate the Fourth Amendment by merely . . . putting questions to [an individual] if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."  Royer, 460 U.S. at 497.  This specific inquiry, by itself, or a related one as to drugs or weapons, does not render an encounter non-consensual.  See Dickerson, 35 Va. App. at 176, 543 S.E.2d at 625 (asked if there was anything in his car, such as "dope, marijuana, roaches in the ashtray"); see also United States v. Wilson, 953 F.2d 116, 118 (4th Cir. 1991) (asked "if he was carrying guns"); United States v. Wilson, 895 F.2d 168, 169-70 (4th Cir. 1990) (asked if he was "carrying any drugs"); United States v. Gray, 883 F.2d 320, 321 (4th Cir. 1989) (asked "whether he was carrying drugs").

As the foregoing demonstrates, Officer Thorson only asked appellant three or four questions, and the duration of the questioning was limited.  At that point, Officer Thorson had not touched appellant.  Neither Officer Thorson nor Officer Durkee indicated or commanded that appellant was not free to terminate the encounter and leave.  The officers did not physically impede or block appellant's access to the public street or to his residence.

Appellant asserts that Officer Thorson's inquiry as to the trash in the yard may have left the "impression" that some sort of summons "might be forthcoming" and, accordingly, he reasonably felt that he was not free to leave.  On brief, appellant relies on Harris, 266 Va. 28, 581 S.E.2d 28, and maintains his "situation is the same" as that defendant.  That reliance is misplaced.

In Harris, the defendant was lawfully stopped for driving with a broken license plate light, and he produced only his social security card when asked for his driver's license and registration. The police officer returned the social security card. Thereafter, however, and without any probable cause to suspect the vehicle contained contraband, the officer asked Harris for permission to search the vehicle. The officer found stolen items in the vehicle. The issue before the Harris Court was whether "the officer extended a lawful detention for a traffic violation into an unlawful non-consensual seizure." Id. at 32, 581 S.E.2d at 209. That Court determined the encounter was not consensual, because "a reasonable person would not have known the investigation of the traffic offense had terminated and, thus, would not have felt free to disregard the officer's questions or felt free to leave." Id. at 33, 581 S.E.2d at 210. The Court specifically noted, nonetheless, "the failure to affirmatively inform Harris that he was free to leave does not by itself require a finding that the ensuing encounter was non-consensual." Id.

Dickerson v. Commonwealth, 266 Va. 14, 581 S.E.2d 195 (2003), was decided the same day as Harris. There the defendant had likewise been lawfully detained after a traffic stop for speeding. No citation was issued, and Dickerson was told he could leave. "Dickerson returned to his car, opened the driver's side door, and started to get back in the vehicle." Id. at 16, 581 S.E.2d at 196. At that point, the officer initiated questions concerning drugs, and Dickerson's answers provided probable cause to search the vehicle. The Court found the encounter consensual because "a reasonable person" would have felt free to leave. As the Court explained:

> The mere presence of officers who are uniformed and armed does not constitute a "show of force" that transforms a consensual encounter into a seizure. . . . Nothing in this record indicates that the officers acted in any manner that threatened Dickerson or that supports a conclusion that he was not free to go.

Id. at 18, 581 S.E.2d at 197-98 (citation omitted).

- 8 -

In the instant case, the inquiry is whether the initial encounter was a seizure. In both Harris and Dickerson there was an initial seizure, but the question in each was whether the subsequent encounter was consensual. Here, Officer Thorson did not mention any potential violation of the law involving the trash. Moreover, there is no evidence that there is, in fact, any law or ordinance dealing with trash, and the officer did not say anything about issuing a summons for any reason. In short, Officer Thorson asked no incriminatory questions of appellant and made no accusatory statements towards him concerning the trash.

Applying the "reasonable person" standard, the totality of circumstances revealed by the evidence and relevant to the inquiry shows that the encounter here was consensual. Ending the phone conversation, acknowledging his address, and producing identification all show that appellant consented. In essence, "he agreed to talk with" the police officer. Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 593 (1993), aff'd per curiam, 247 Va. 339, 443 S.E.2d 160 (1994). Nothing in this record, as in Dickerson, "supports a conclusion that [appellant] was not free to go." Dickerson, 266 Va. at 18, 581 S.E.2d at 198. An encounter does not become non-consensual because a citizen "voluntarily" says something incriminating which is later "offer[ed] in evidence in a criminal prosecution." Royer, 460 U.S. at 497.

Affirmed.