COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


COREY NEVILLE MATTHEWS, S/K/A
  CORY N. MATTHEWS

MEMORANDUM OPINION[*] BY

v.      Record No. 2632-05-2            JUDGE ROBERT P. FRANK
                                  MARCH 13, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Reginald M. Barley for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Corey Neville Matthews, appellant, contends that the trial court erred in denying his motion

to suppress, as police did not have "reasonable suspicion that [appellant] was engaged in criminal

activity." For the reasons stated, we affirm the decision of the trial court.[1]

BACKGROUND

On May 6, 2004, well after midnight, Detective Lamont Paul Tucker of the Richmond

Police Department saw appellant's vehicle parked outside of a house on a street in an area

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Court notes that the conviction and sentencing orders indicate that the appellant
was found guilty, upon his conditional guilty plea, of possession of cocaine in violation of Code
§ 18.2-250. However, from a review of the record and the representation of the parties, it
appears that the appellant was indicted for, and entered a conditional guilty plea to, possession of
cocaine with intent to distribute in violation of Code § 18.2-248. As this discrepancy has no
effect on the issue before us, this matter is remanded to the trial court for the sole purpose of
clarifying, if necessary, the proper charge and statute under which appellant was convicted.

well-known for illegal drug activity.[2]  Appellant was sitting in the driver's seat, and another person was sitting in the front passenger seat.  Detective Tucker parked his police vehicle parallel to appellant's car on the opposite side of the street, where it would not block appellant's car from leaving the scene.  Detective Tucker approached appellant on the driver's side of the vehicle.

Detective Tucker asked appellant if he lived at the house and if he "needed anything."  Appellant responded that he was visiting the mother of his child at the house.  Detective Tucker asked appellant and his passenger for identification.  While appellant was looking for his identification, Detective Tucker noticed a digital scale on the floor between appellant's legs.  Detective Tucker testified that, in his training and experience, digital scales were frequently used for drug distribution.

Detective Tucker asked appellant about the scale and, in response, appellant became "very upset" and "out of control."  Appellant began "moving around inside the vehicle" and "putting his hands from the front to the rear of the vehicle."  Appellant was "yelling and going pretty crazy."  Several times appellant's hands were out of Detective Tucker's view, reaching behind the passenger seat and inside the glove box.  Detective Tucker repeatedly asked appellant to "relax" and to show him his hands.  Appellant did not comply.

At that point, Detective Tucker stepped back from the vehicle and put his hand on his weapon, though he did not draw his gun.  Detective Tucker requested for other officers to respond to the scene, and two other officers arrived "within seconds."  Appellant continued to ignore the officers and move about the vehicle until one of the responding officers "racked a shotgun."  Detective Tucker then told appellant to exit the vehicle slowly.  As he was doing so, Detective Tucker saw an "off-white rock-like substance" on the floor of the vehicle near appellant's right foot.

_____

[2] Detective Tucker testified that he had personally made drug arrests at the house in front of which appellant had parked his vehicle.

Detective Tucker placed appellant in handcuffs and recovered the cocaine from the vehicle. Upon searching appellant incident to arrest for the cocaine discovered in the vehicle, Detective Tucker found more cocaine in appellant's pocket. Detective Tucker did not seize the digital scale that he initially saw on the floor of the vehicle.

The trial court ruled that the initial encounter between appellant and Detective Tucker was consensual. The trial court further found that, while the digital scale may have given Detective Tucker reason to investigate the situation further, reasonable suspicion to detain appellant developed when appellant reacted "improperly" to Detective Tucker's question about the scale. This reaction, coupled with the drug activity in the area and the late hour, gave Detective Tucker reasonable suspicion to believe that appellant posed a threat to his safety and that appellant was engaged in criminal activity.

This appeal follows.

## ANALYSIS

On appeal, appellant contends that Detective Tucker's "observation of a digital scale in [appellant's] car" was insufficient to provide Detective Tucker "with reasonable suspicion that [appellant] was engaged in criminal activity."

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

- 3 -

On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)).

Fourth Amendment jurisprudence recognizes three categories of citizen-police encounters. Sykes v. Commonwealth, 37 Va. App. 262, 267, 556 S.E.2d 794, 796 (2001).

> First, there are consensual encounters which do not implicate the Fourth Amendment. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citations omitted).

Here, the encounter between Detective Tucker and appellant began as consensual. See United States v. Mendenhall, 446 U.S. 544, 554 (1980) (holding that an encounter is consensual and no seizure occurs under the Fourth Amendment unless "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). Detective Tucker did not impede appellant's exit from the area, and he did nothing to indicate that appellant was not free to terminate the encounter and leave. During such an encounter, Detective Tucker was entitled to question appellant and ask for his identification. See United States v. Drayton, 536 U.S. 194, 200-01 (2002) (holding that police officers may, even if they "have no basis for suspecting a particular individual," approach individuals in public places and "pose questions, ask for identification, and request consent to search" without implicating the Fourth Amendment).

Appellant complains that Detective Tucker's observation of a digital scale on the floor of his vehicle did not supply him with reasonable suspicion to detain appellant and remove him from the vehicle. We need not consider whether the presence of the digital scale alone gave Detective Tucker reasonable suspicion to detain appellant. When Detective Tucker noticed the digital scale and questioned appellant about it, the encounter remained consensual. Nothing in Detective Tucker's actions or demeanor would indicate to a reasonable person that appellant was not still free to leave at that time.

It was not until after appellant began yelling and apparently reaching for something inside the vehicle that the nature of the encounter changed. When Detective Tucker stepped back from the vehicle, put his hand on his weapon, and told appellant to keep his hands in view, appellant was "seized" for purposes of the Fourth Amendment.[3] See Mendenhall, 446 U.S. at 554 (holding that circumstances that could indicate a seizure includes "the display of a weapon by an officer" and "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). At that time, appellant was not free to leave.

> In order to justify such a seizure, an officer must have a "reasonable and articulable suspicion of criminal activity on the part of the defendant." Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989). However, an officer need not suspect an individual of a particular crime . . . . A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion.

Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992).

"[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." Hayes v.

---

[3] Appellant does not challenge any part of the encounter until Detective Tucker stepped back from his vehicle and placed his hand on his weapon.

Florida, 470 U.S. 811, 816 (1985). "There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (*en banc*).

> In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the "totality of the circumstances -- the whole picture." Assessing that whole picture, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."

Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

Considering, as the trial court did,[4] all of the circumstances surrounding the encounter between Detective Tucker and appellant at the time appellant was seized, we find that Detective Tucker had reasonable suspicion to believe that appellant was engaged in criminal activity. Appellant was parked, late at night, in a neighborhood well-known for its illegal drug activity. Detective Tucker had personally made drug arrests at the house appellant said he was visiting. Appellant had a digital scale, an item commonly used for the distribution of drugs, sitting in plain view on the floorboard of his vehicle. When questioned about the digital scale, appellant became "out of control" and began yelling. He reached into his glove box and behind the passenger seat, ignoring Detective Tucker's repeated requests to keep his hands where Detective Tucker could see them. Based on appellant's behavior, his possession of possible drug paraphernalia, the location and the timing of the encounter, Detective Tucker had reasonable

---

[4] The trial court made it clear that it did not consider only the digital scale when determining whether Detective Tucker possessed reasonable suspicion to detain appellant and remove him from the vehicle. Indeed, the trial court states that it considered the "totality of the circumstances" and lists the location and timing of the encounter, the presence of the scale, and appellant's reaction to the officer's questions as forming the basis for a finding of reasonable suspicion.

suspicion to believe that appellant was engaged in criminal activity. Thus, Detective Tucker could lawfully detain appellant while he conducted a further investigation.

Once an officer has lawfully detained an individual, "he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the stop.'" Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988) (alterations in original) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). "An officer may preserve the status quo by ordering the person detained to place his hands where the officer can see them." Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 129 (1998) (*en banc*). An officer can also order an individual who is lawfully detained "to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977). Removing the driver from the vehicle establishes a "face-to-face confrontation" that "diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault." Id. at 110.

Detective Tucker, in an effort to protect his personal safety and that of the other officers present, ordered appellant to exit his vehicle. When appellant did so, Detective Tucker observed a rock of what he believed to be crack cocaine in plain view on the floor of the vehicle. See Delong v. Commonwealth, 234 Va. 357, 366, 362 S.E.2d 669, 674 (1987) (holding that officers were justified in retrieving gun in plain view from appellant's vehicle, as officers had probable cause to believe the gun had been used in a murder). As Detective Tucker possessed reasonable suspicion to detain appellant, was justified in asking appellant to exit the vehicle, and saw the cocaine in plain view upon appellant's exit, we find that the trial court did not err in denying appellant's motion to suppress the cocaine.

## CONCLUSION

We find that, under the totality of the circumstances, Detective Tucker had reasonable suspicion to believe that appellant was engaged in criminal activity. He was justified in removing appellant from his vehicle in order to protect the safety of the officers at the scene. Upon appellant's exit from the vehicle, Detective Tucker observed a rock of cocaine in plain view that he was entitled to seize. Accordingly, we affirm the trial court's denial of appellant's motion to suppress the cocaine.

Affirmed.